I'd like to focus on the clearest and principal ways that the government is asking the court to rewrite a contract that the contract clauses that the government wrote. This is a case about contract interpretation and the government's position and interpretation is contrary to the express contract language. When the government proposed that language, did your client propose a counter language or question? This was a government form and it was a request for submissions and we responded to the submission. Did you question that form or ask for clarification on that form? As to these clauses, there's nothing in the record to indicate that. First, the word contemplated in the contract. That's what it says. It says contemplated. It doesn't say completed. That's what the government wrote and now the government is coming in and saying that actually means completed. One, that word is not in that clause, the word completed. Two, the government is not only asking the court to take a word and import it into the clause, but it's taking a word that is used elsewhere in the contract. If the government wanted to talk about completed improvements in the tax adjustment clause, it could have, but it didn't. What do you believe that word means? Contemplated? Contemplated. That... In the context of this case. It means any improvements set forth in the particular lease. That would make the base year the beginning of the contract every single time. Which typically it is. And why would there need to be this provision at all if that were the case? Because sometimes it isn't. And again, this is a form. We talk about the second sentence, the partial. This is a form. There are other things in there. There's a reference to the base year is determined by a full assessment or by negotiation. As it turned out, it was a negotiation. So it's a form. Some end up applying and some don't necessarily apply. The partial assessment, it's not a partial assessment. Does the District of Columbia assess property like this, commercial property like this, on a tenant by tenant basis? On an owner by owner basis. It's an annual tax assessment. It's not when there's a new tenant that you get... But it's an assessment for the entire building. Yes. So how would there be an assessment with respect to contemplated improvements as you read it? Contemplated meaning the particular lessee's improvements. Because the... among other things, the contract is only... you don't know whether there are going to be any other leases. There may be other leases in existence already. The only thing the government is contracting for in this lease is the particular space specified in the lease. And I think that's clear if I can point to the portion of the contract that does use the word completed. It's on A-201 of the appendix. And it refers to the acceptance of space. It uses the word complete, substantially complete, and it's a defined term. Substantially complete shall mean that the tenant improvements as provided in this lease shall have been completed or obtained. So completion is defined in the lease as within the four corners and the improvements of the lease. You can't lease for something that may be subject to other leases that may or may not happen dealing with other tenants. So the question is whether there's been a full assessment, whether the taxing authority has considered all improvements. And the point is here, the taxing authority did consider the full value of the building. The government stipulations to that effect, and the government says so in its brief as well on page nine. The District of Columbia says this building had 100% of the market value. But what matters is we have a contract interpretation question in front of us. So that's what matters most. And what about the Federal Circuit opinion in Kimbrough, which sort of made it clear that contemplated improvements are considered when those improvements are actually completed? And then that case and I guess a couple of other cases, one from the Court of Federal Claims, all lean towards supporting the idea that the best understanding of this provision is after the improvements have been completed. Well, not necessarily consideration of this provision. Kimbrough did not have a definition of full assessment. And one of the other cases that mentioned not in this court also does not have this. As far as the Kimbrough case is concerned, Kimbrough involved an initial assessment of just the land that clearly excluded the building. The lease was to lease the building. So the question was a comparison in year one between an assessment that did not include the building that was the subject of the lease and the second year in which there was a building. This case, in Kimbrough terms, is really year two. That's what we have. We have the building. We're not talking about an assessment of empty land or a converted factory or a converted paper mill. The building is there. The building is complete. The building has a market value. And OTR fully assessed that market value no later than 2007. So we're really like Kimbrough year two, which is the year in which the court held that was the base year for the full assessment. Kimbrough didn't get into things like what was the level of occupancy and were there improvements for other things. It was simply rejecting a rather aggressive position by the lessor that an assessment that had been done before the building was built could somehow be taken to be the assessment of the building. And that's what the court rejected. What is your understanding of the scope of this appeal? And what I mean by that is if the government's interpretation is correct, then is there any dispute that the base year is 2010? And likewise, if your interpretation is correct, then there's no dispute that the base year is 2007. Is that a fair way to characterize the appeal? Well, no, because if I understand the question correctly, our position is that the 2007 assessment constitutes a full assessment. And so for some years, it will be the 2007. Some of the leases started later. So under our interpretation, they would be subject to assessment under the relevant assessment governing the first year of those leases. As far as the government's position is concerned, if the question is if you agree with the government's interpretation of the contract, do you affirm summary judgment in favor of the government? The answer to that is no, because the summary judgment, even aside from the contract interpretation question, which is a legal question, is the government's interpretation and the summary judgment is based on factual inferences made by the district court. So even if you agreed with the government's position, the correct disposition would be reversal for resolution of the fact disputes. And in terms of the fact disputes, I think they are crystallized most clearly on page 810 of the appendix where the judge says it's possible that the increase in value came from increase in market value. Well, if it's possible that it came from increase in market value, then the government's contention is that their concern is only with respect to being allocated a portion of the tax assessment for improvements by other tenants. The lease-up costs that the government talked about constitute a very, very small fraction of the increase in value. Even if the government's premise about lease-up costs is correct, the delta, the differential between the highest and the lowest lease-up cost is $9 million. And to say in the real world, in the location of this building in the time period that we're talking about, when a major cabinet department moves its headquarters to the area, when a major league baseball park is built down the street, and other development interests along the waterfront, to say that the increase in value is due to the fact that the government took a lease for the seventh floor of the building, it's at least a factual question. It really borders on shutting one's eyes to the reality to say that it was anything other than the economic development, the market as a whole. Particularly because, as mentioned in the argument and mentioned also in our brief, there's another commercial building down the street, the Transpoint building, where the assessments follow the same trajectory as the assessments for the building involved in this case. And the issues about leases, occupancy, vacancy don't exist for that building. The increase in the market price was an increase in the market, and that is precisely the reason that you have a tax adjustment clause in the first place, to be able to pass those costs through to the government. And that's what the government proposes in the contracts that it writes, and that's what the government agrees to. The notion, in terms of rewriting the contract, the government, I mentioned the contemplated and completed, the government also, the contract says that full assessment turns on what the taxing jurisdiction has considered. The government's position is that what the taxing jurisdiction considered and did is irrelevant, has no bearing, is the way they put it in their brief. That's rewriting the contract. The evidence in terms of we know what the contract means, we should know, it's not ambiguous. As to the fact question, as to what did the taxing authority do, there's no dispute in stipulations as to the evidence of that. The taxing authority considered all improvements. The taxing authority considered 100% of the market value. In a nutshell, it's our position on that. I've talked about the fact inferences. I did want to make the point on the Kimbrell case, because we really are like Kimbrell, the second year in Kimbrell. That is, the building is built. The building is there. The building is the building. We're not talking about a paper mill that has to be converted, one of the cases, or a warehouse that's going to be converted. It's also a stipulation, by the way, as to that partial assessment that in denying the claim for the tax payments, GSA did not state that this was a renovation. So we did not reject it on the basis of our being in that second sentence of the definition of full assessment. Mr. Gainsbury, do you want to reserve your rebuttal time? Yes, I would. Thank you. Let's hear from the government. Good morning, Your Honors. Your Honors, as Mr. Gainsbury said, it's very clear this is a case of contract interpretation that's asking this Court to interpret the definition of the term full assessment as it's used in this clause. And I think it's very important for this Court to understand one thing that Mr. Gainsbury did not mention was that there's also a clause in this contract that specifically requires that all bargain for tenant improvements with regard to each and every one of these leases be substantially complete before GSA will accept the premises and before the lease will even start. And so they've been throwing out these typos of converted warehouses and paper mills, but that's never going to be the case under this lease. This lease would never commence under those circumstances. What we're talking about here is a lease where the premises at least, so at least a portion of the property that is to be leased by GSA, is move-in ready before the lease starts. And there's still this language in the contract that defines the term full assessment and defines it specifically in opposition to the term partial assessment. And so to give this term full assessment any meaning at all, there must be some situation in which GSA moves in, the tenant improvements are complete, and yet the property is not yet at a term of full assessment. And they have provided no example of where that can possibly be the case. And so what they are effectively asking this court to do is write the term full assessment out of the contract entirely and render that term completely meaningless. And as the court is well aware, in matters of contract interpretation, it should give full purpose and effect to every clause in this contract. I guess I'm wondering when it comes to a large commercial building, people are constantly going to be moving in and out of that building, and there's going to always need to be some kind of tenant improvements. And if that's the case, then don't you end up extending out what could fairly be regarded as the base year under your interpretation until maybe never? No, Your Honor. I'm glad you asked that question because this is an important distinction to make. The government's position is not, and was not below, that as long as there are any tenant improvements that need to be made, and as long as any lease-up costs whatsoever are applied by the D.C. Office of Tax and Revenue, that the property cannot reach a point of full assessment. Rather, what we're talking about here was a roughly 470,000 square foot office building that, there's no dispute in the record, was an empty shell with no tenant improvements. It was assessed by the Office of Tax and Revenue for tax year 2007 as a completely empty building that needed $18 million worth of lease-up costs. And so what we're talking about is the initial tenant improvements that are required to get tenants into the building. The purpose and intent of this clause is to protect the government from exactly this sort of situation, and I think it's very clear from the fact that the following sentence defines partial assessment, that what the purpose of this is to protect the government from an artificially low tax base in precisely this situation where you have a building that's newly constructed or under renovation, and the government comes in as the initial tenant or an early tenant, then as other tenants come in, whether they're government or non-government, all of a sudden the assessed value of the property increases astronomically in a very short period of time. Here we have a 241 percent increase over the course of just three tax years. Well, as this building gets leased out, tenant after tenant after tenant, when do you get to the point where there's a full assessment? When the last tenant moves in? When all of the square footage of the building has the necessary improvements to get a tenant in the building. So if the landlord can't lease out the last 50,000 square feet or something, then there is no base year? It just sort of remains for a while? That's correct, Your Honor, and that's our interpretation of this clause, although I would note that's very much not what happened here. GSA determined that it was at a point of full assessment, and I would also note that I think that's an exponentially less absurd result than the exact result that's being urged upon this Court by the appellant in this case. It seems to me you argued in your brief that the full year would be when it's mostly leased out. Well, Your Honor, we were describing the basis for Judge Wheeler's decision where he did look at this and noticed that over 80 percent of the square footage of this office building had been – the contemplated improvements had been considered by the taxing jurisdiction as of tax year 2010, and that was the basis for his affirming GSA. Didn't we just hear you say that that wouldn't be enough under your understanding of the provision? 80 percent is not enough. Yes, Your Honor, that's correct. I mean, we are aware that the way GSA specifically applied it in this case does not necessarily comport with a strict interpretation of our interpretation of this clause. In practice, GSA tries to be fair and tries to be understanding towards tenants and makes this determination, and generally speaking, that's always – generally speaking, that's going to be a situation which actually benefits the lessee, for them to not try to use this as a cudgel to ever avoid having to pay tax increases. Your Honor, I would also note that this – I think it's very clear that the purpose and intent of this clause is to protect the government from these sorts of unfair tax increases. The very next sentence of – that follows is – The tax increases really are only 1 percent related to all the various tenant improvements that are going on in the building during the timeframe. It's 99 percent related to market forces, and maybe that's even the fact pattern we have here. Well, Your Honor, under that hypothetical, we would still argue that it had not reached a point of full assessment until all the contemplated improvements had been considered by the jurisdiction. However, I would very much emphasize to this Court – Mr. Ganser has cited some numbers – I would emphasize to the Court that that's very much not the fact pattern we have here, particularly with regard to tax year 2007. We had a situation in which the Office of Tax and Revenue applied $18 million in lease-up costs and deducted that from the otherwise stable value to come up with a final value of $35 million. But if we accept your position, then the hypothetical would go the way that you want the facts here to go, right? Yes, Your Honor, it would. So then that would be a windfall to the government, wouldn't it? I suppose it could be characterized that way, Your Honor. Yes. But again – Is the government still using this particular tax assessment provision in all of its leases? My understanding is that there may have been a slight rewording of one thing, but in substance it is. Yes, Your Honor. It is a bit cryptic to try to figure out what is going on, and can people really foresee all the different impacts? Well, Your Honor, I would disagree with that. I think it is by saying full assessment is the point at which the taxing jurisdiction has considered all contemplated improvements to the property. Again, it could have used the word premises. It didn't. It used the word property in its evaluation of the same. What it's talking about is – It's not necessarily what your position is. We need to understand that the word completed is part of the sentence. Yes, Your Honor, but our argument is that the word completed is necessarily implied by that – the idea that the taxing jurisdiction must have considered all contemplated improvement in its evaluation of the property is very different than what plaintiff is urging the court to do, which is to say, well, the Office of Tax and Revenue did look at all this empty square footage in this empty shell building and say it would cost X amount to get tenants in here. Therefore, we're going to use that to reduce the value of the property. What's wrong with that? I mean if OTR is coming in and making an assessment of what kinds of improvements are needed to the building, then they are contemplating improvements, right? No, Your Honor. They are contemplating the lack of improvements. They're contemplating the absence of improvements and the fact that improvements need to be made in order for this building to get tenants and in order for this building to reach its full commercial potential. Recognizing a lack of something is very different than recognizing the presence of something and the added value to the property in arriving at its final evaluation. And I think it's particularly true, again, when you consider the fact that this only comes in when all the tenant improvements to each and every premises have been substantially complete and in light of the fact that the very next sentence has this language about partial assessment. And so specifically, it's clear that the purpose of this clause is to protect the government from situations exactly like this one. What does partial assessments mean? Well, Your Honor, partial assessments is basically, my understanding is that a partial assessment is a very different type of assessment for a newly constructed project or for a project under construction. But I think as the contract defines partial assessment, it's any assessment by a taxing jurisdiction to a property that falls into one of these defined categories. Is this leasing provision used in government leases on buildings that have been occupied for a while where the government is just taking over a space? Yes, Your Honor, it is. It's not just used for newly constructed buildings that will go through a period in which there will be tenant build-outs over time? That's correct, Your Honor. It's not only used in that. But by definition, it only applies in that sort of situations where a property has not reached a point of full assessment. Okay, then what's the purpose of that provision if you're leasing a building that's already fully occupied and you're just taking over some space? Well, Your Honor, then it doesn't come into effect at all because, again, all of the contemplated improvements to the property would already have been made and completed and considered by the taxing jurisdiction. I guess you're saying government's entering into thousands of contracts and they just have the same cookie-cutter provision in all of them and some elements of the provision get activated in certain contexts and other elements get activated in another context. Yes, Your Honor, I think that's necessarily a part of the government contracting. Your Honor, I would, if I could just make a quick point, a few points directly in response to a few things Mr. Gansfried said. He said that they dispute that there was a fact question or they claim, they are arguing that there was a fact question as to whether or not the increase in value of this property was due to the completion of these improvements. I believe Mr. Gansfried actually mischaracterized what Judge Wheeler, in his opinion, said. He did not say that it was possibly all a result of market forces. What he said is that it's possible that some of it was a result of market forces, but that definitely some of it was due to these completed improvements being considered by the taxing jurisdiction. And that's, I don't see how they could possibly dispute that because, again, there's no factual dispute about the Office of Tax and Revenue. I don't think they could possibly dispute that some of the increase in the property taxes is due to the market forces, right? No, Your Honor. We wouldn't dispute that. There's no way of knowing exactly how much. And you're saying just based on the way this provision is written that all of those costs and the property tax increases are just borne on the lesser, not the lessee. Yes, Your Honor. In the circumstances where there's still all kinds of improvements that need to be made. Yes, Your Honor. And it's important to note for this court, it's not as if the government was not paying its share of any property taxes at all. That's a very important consideration during the negotiation of how much rent the tenant will pay. And so they look at the current amount of taxation, factor that into rent. But it's certainly correct that we are arguing here that until, between that point at which the lease commences and the point at which the property reaches full assessment, those increases in the assessed property tax are borne by the lessor. Also, Mr. Gansfried mentioned the Transpoint Building. I would note for the court that there was nothing in the record about the Transpoint Building. There was nothing in the joint stipulations that the court asked the parties to prepare. Plaintiff's counsel did make one very vague conclusory statement at oral argument that there was a Transpoint Building that followed the same arc, but there was no evidence presented. And so I would say that was an improper thing for this court to rely on, that there may be other properties which were also similarly increased in value. I would also just note for the court, Mr. Gansfried said several times that the Kimbrell case was factually distinguishable because he characterized us as being in year two of the Kimbrell case, which is true in a way. But the Kimbrell case did involve a wholesale government lease where the government moved in all at once. And so you had year one, no government in there, year two, all government in there. And so to the extent that we're in year two on these facts, year two actually stretched out over several years as the government moved in piecemeal on these leases. And so I think that's an important distinction that the facts of this case are distinguishable from Kimbrell because it's not as if the government here signed one lease for the entire building, which was the facts of that case. And, Your Honors, I see I'm almost out of time, so unless the court has any further questions, I would thank you for your time and respectfully ask the court to affirm the decision of the Court of Federal Claims. Okay, thank you. Thank you. Two brief points. First, I believe counsel for the government has just said that all the cases that they relied on in terms of the tax adjustment clauses are distinguishable. Referred to when I talked about paper months, those are different facts and they have no bearing here. So those are the cases that Judge Wheeler relied on here in this case. Second, with respect to it always being the first year of the lease, that's not our position. Look at the initial lease in this case. The occupancy was in January 2005. Our position is that the base year for full assessment is tax year 2007. That is the year in which there was a full assessment. So it's not the notion that our position writes things out of the contract is not the case. Because some years it will be, and typically it is, and in many contracts it is the initial year and that serves as the base. Another point. The government does not pay any share of taxes until the base year is established. So it's not as if we are talking about some ongoing payments from the government from the initiation of the first lease year 2005 all the way through and then some adjustments to be made. If the government pushes the base year to the last year or even beyond the last year of a lease, it means the government goes through the entire lease without paying anything, any share of the taxes. Because the tax adjustment clause is an adjustment in the delta based on the base year. It is not an indication that the government pays X percent and then work on that. The base becomes the fulcrum for that decision. Next. It is quite significant that there was no supplemental assessment by OTR in this case. Because the categories there are the same categories as in that second sentence about partial assessments. And OTR did not do that. The lease says that what you look at is what OTR did. The evidence and stipulations are undisputed that OTR considered all the improvements. That OTR considered 100 percent of the market value. So if you read the contract to mean exactly what it says, there is no dispute in the evidence as to what OTR did. Do you have a final thought? Yes. The government has great benefits from being the first tenant in an area that is being rejuvenated. The per square foot rent for the first lease was a lot lower than the per square foot rent for the last lease. The government is taking all the benefits that it gets from leasing in a geographic location that is at the beginning stages of an economic rejuvenation. And yet is trying to write its way out and rewrite the contract to eliminate some of the obligations that it agreed to in the contract that it wrote and signed. Thank you. Thank you. Case is submitted.